Go on to the last case on the calendar, which is 25-1448 Shellenberger v. AIG WarrantyGuard. Shellenberger v. AIG WarrantyGuard. Council, Madam Clerk has just reminded me, hang on, are both of you arguing and splitting your time? Is that what you're doing? Okay, so Madam Clerk's going to set the time for 10 and 10. Is that what you want? Unless you tell her otherwise. Okay, that's just fine. May it please the Court, Kristen Chapman on behalf of Appellant Hadassah Shellenberger, I'd like to reserve five minutes for rebuttal. This case is about a marketing letter that promised warranty-like repair or replacement coverage and a contract that gave defendants the right to refuse that coverage and provide a depreciated cash buyout instead. The District Court held Ms. Shellenberger could have discovered the buyout by following a generic claimer to the contract, but buyer beware is not the law in Washington. A generic what? Disclaimer. Oh, disclaimer. You're referring to the asterisk? Yes, Your Honor. The generic disclaimer, the limitations and exclusions apply, see terms and conditions. And then that referred to a website? Correct. It provided the URL and the physical letter. Okay. Can I track it through and see, I want to see how your argument works. Let's assume for a moment that there was no buyout provision in the contract. But we know from the marketing materials that only covered repairs are going to be paid for or covered replacements and that exclusions apply, et cetera, et cetera. In order to, a reasonable consumer at that point, I think our case law says, would have to look at the contract to figure out what exclusions and the letter wouldn't be misleading because it said exclusions apply. And then you'd be expected to look at the, at the contract to see which, what they were putting it, leave out replacement for a second. I disagree, Your Honor.  So you think it's, it's, you think that a letter that says we covered, we'll cover a hundred percent of covered repairs, exclusions and limitations apply is misleading on its face? Because not a hundred percent are covered? Well, Your Honor, first let's talk about the, the phrase covered repairs and where applicable referred to scope limitations. Why? No, there are plenty of limitations in the, it says, for example, if you tried to repair it yourself and screwed it up, we don't cover you. Correct. So what's the answer to Judge Hurwitz's question? Can you take another run at it? Because I think it's an important question. Yes. So when the, so covered repairs, I think it's a yes or no question. Your answer is no, right? Your answer is that it would be misleading even without the replacement provision because it doesn't cover a hundred percent of, of repairs. Apologies, Your Honor. I misunderstood your question. No, I do not think it would be misleading.  And the reason it wouldn't is that, that, that conditional language is, is in the marketing materials and our cases say at that point you're put on notice that you ought to go take a look at the, at the actual document and see what's covered and what's not. And so I, just a slight nuance with the second portion of that. Covered repairs signals to consumers that not everything in covered, misuse, alternate yourself, that's not covered, that's expected. It doesn't signal that the remedies offered are not available under the contract. But I'm, I'm, I've asked you to leave out the replacement for a moment because I wanted you to come back to it. So here's my, the reason that I'm asking the question this way is that it seems to me that on the cover of this marketing material, under our case law, we direct somebody to say when it says covered or exclusions apply, it's not misleading if, because you're then have been alerted to go take a look at the document. I think that's what Davis says and I think what other cases say. Now my question, which I'm not sure there's an easy answer to is when opposed to use this. I think the cover letter may be misleading in the sense that you're never going to get a replacement of your machine. Because they'll buy it out instead. Why would you replace a machine with another brand new machine when you could buy it out at 75% of the thing? So I think that may be a misleading statement. My question is, since under our law, your client was already directed to take a look at the contract, and if she had, she would have discovered this provision occurred, does that make a difference? Your Honor, the boilerplate limitations and exclusions apply doesn't put a consumer on notice of the specific limitation that is at issue here. It's generic. Yes, Your Honor. Does it matter? I didn't mean to interrupt you. I was just sort of winding up, but do you want to finish that sentence? It's generic language that what? It's generic language that as AIG says in their brief, it's ingrained in our vernacular. It's ubiquitous in consumer. So it doesn't put a consumer on notice of anything specific. It doesn't more. It tells you there's more than the bullet points in the letter, right? It does, Your Honor. But if that was sufficient to put a consumer on notice, then it would immunize every single advertisement because everything says limitations and exclusions apply. Counsel, I think you're gliding off more. I'm just trying to take this incrementally. And I have a question about this, about Judge Hurwitz's point. I think that what you called the disclaimer at the bottom puts a reasonable consumer on notice that there's more. And my question is, does it matter? One thing that comes through clearly in your briefing is that you think it matters where one has to go to find that. But I also think it might matter, and I'm wondering if there's any authority for this point, whether the more is not a clarification of one of the terms in the cover letter in the bullet points, but what's something that actually contradicts what one of those bullet points say. Do we have authority that speaks to that? Yes, Your Honor. I believe Whiteside is a good case to look at because there the court held that the fine print can't contradict the representation made. Additionally, Washington case law, the L.A. Investors Washington Court of Appeals case talks about disclaimers and says that disclaimers are inadequate unless they're sufficiently prominent and unambiguous to change the apparent meaning of the representation. I'm going to ask you consistently today to rely on Washington case law because the fact that I think both sides, both briefs dipped into California case law, which I found distracting and concerning because we're a federal court and you'd have to do a lot more talking before I'd want to expand Washington case law or suggest that we're doing any such thing. So what is the Washington case law that you want to rely on for this proposition? Your Honor, it's state versus L.A. Investors. It's a Washington Court of Appeals case, and it says that disclaimers are inadequate unless they're sufficiently prominent and unambiguous to change the apparent meaning of the communication. Thank you. OK, so that's that's the part I do know. I'm looking for other and maybe it doesn't exist. I don't know this because we certainly practiced it trying to guess, predict what the Washington Supreme Court would do. But I'm just trying to figure out whether a Washington court has opined on a follow up or a disclaimer that actually contradicts what's in in this case would be in the in the letter. Do we have that authority from from a Washington court? Your Honor, there's the the mandatory poster case, which is similar to the L.A. Investors, which there the disclaimer was actually gave the qualifying information that this is not a government document and the court held it was insufficient because it was overshadowed by the other misleading. Yes. And so, Your Honor, and in Panag, the court talks about even if the information is accurate, it can still be deceptive if it has if it would mislead consumers. So I think those cases support the proposition here. Miss Schellenberger is not asking this court to expand Washington authority here under the Washington authority. The court looks at the net impression of the communication to determine whether it has the capacity to deceive a substantial portion of the public. And here it does for several reasons. Can I stop you there? When you go forward in your analysis from here on out, are you what standard are using for the reasonable consumer? Your Honor, the Washington attorney general's amicus brief makes important points about the remedial nature of the Consumer Protection Act and its liberal construct. I know. I've read the brief. What standard are you using? So Your Honor, under either the reasonable consumer or the least sophisticated consumer, the marketing letter was deceptive. So it's not an issue. So has the Washington Supreme Court, since you just assured me that you're not trying to stretch Washington law, has the Washington Supreme Court ever applied the least sophisticated consumer standard in a case like this? Well, I couldn't find one. So to just be clear, I'm going to be upfront about that. I couldn't find one that didn't involve debt collection. Correct. Thank you, Your Honor. Well, in Panag, the court used reasonable consumer and then also said we looked to the least sophisticated of those. And I think the functional inquiry is the same. When we're thinking about the consumer here, it's not the lawyer who sits down and gets to parse through the different phrases. It's the person who has just spent a significant sum of money on an appliance, has registered that appliance with the manufacturer to get the limited manufacturer's warranty, and then starts receiving marketing mailers encouraging the consumer to extend the life of their appliance to protect their investment and offering them no out-of-pocket expenses for covered repairs and replacements. Well, but you know, but see, that's why I keep coming, I want to come back to that. Let's again, take out that, take out the buyout provision. You're not contending today, are you, that the letter is misleading because it says no out-of-pocket expenses for covered repairs and replacements? Your Honor, it's hard to take out the buyout because that's why it's misleading. Take it out. I don't care how hard it is. Forget about it. Let's assume we have a letter that just, there's no buyout. The letter just says no out-of-pocket expenses for covered repairs and replacements and then says some exclusion and limitations may apply. Is that a misleading, does that violate the Washington statute? No, Your Honor. Okay. So now, and this is the question I tried to ask you before, I want to try to ask it again. And if I, because I'm not sure I'm asking it right. We know it doesn't violate the Washington statute because we have case law that says under that circumstance, when it's ambiguous, it's not misleading because you take a look and find out what the exclusion, what is covered and what's not covered. And the only way to find that out is by looking at the actual document. I'll call it the warranty or it's not really a warranty, it's a service plan. So my, what I'm trying to figure out is this, if, if in order to figure out what's covered, you have to look at the service plan and if you read the service plan, you would find out that there is this buyout provision. Where does that leave us? And Your Honor, I don't think it's ambiguous what is covered. Covered repairs is a, a reasonable consumer would look at covered repairs and know it's within this, the reasonable limitations, right? If I light my dishwasher on fire, that's not a covered repair. But if my dishwasher starts working, that's a covered repair. That has an understandable meaning that the consumer doesn't need to look elsewhere. But our case law says the reason that there's no deception there is that those kinds of terms, which are not all encompassing, automatically direct the consumer to take a look at the terms of the provision to see what's covered and what's not. And I don't, I don't think it's because the consumer knows what's covered and not what's  They just, you've been alerted that not everything is covered and you won't, you got to go take a look and figure out what is. Now I know under replacement, there's a different argument, but I'm trying to figure out if the consumer under our law, given those kinds of terms is directed to take a look at the, the contract and had your, your client done so, she clearly would have discovered the buyout. Why isn't that enough? So the, the moment that the consumer is induced to act is the moment that matters for evaluating the capacity to deceive. And that is supported by the Washington Court of Appeal case Robinson versus Avis Car Rental. And so here, when the, the letter represents that there are, there is repair and replacement coverage for covered repairs. And now a reasonable consumer would understand that as a scope limitation, not that it is, that there is a fundamental, that the defendants have a right to not provide that repaired or replaced. I agree with you. I absolutely agree with you. I'm asking a different question and I guess we're missing each other on it. I absolutely agree with you that a reasonable consumer would not understand from the language in the marketing materials that there was a buyout provision. But I do think a reasonable consumer would be directed to the terms of the contract because of the limitations or because of the covered language. So I'm trying to figure out whether having, because a reasonable consumer would be directed towards those terms, she then would have discovered that there was a buyout provision. I believe I understand now, Your Honor. So first, I, I disagree with the premise that a reasonable consumer would need to look elsewhere to understand what covered repairs means. A term is ambiguous when a consumer would need additional information before reasonably concluding what is being represented. And I think here, a consumer could understand covered repairs as reasonable limitations. Additionally, the limitations, yes, Your Honor. Well, right there. When you, when you, Judge Hurwitz's question presupposes that a reasonable consumer seeing the disclaimer, what I'm going to call a disclaimer, which includes the asterisk and the reference to the website, would call the consumer's attention to all of that. I think both parties rely on what I call label cases for this, where there's an asterisk and that requires the consumer to sort of turn the bottle over or look on the side label or something. Do we have any case authority that requires a consumer to do this? To go off to a website? Or charges the consumer with knowledge of what, what she would read if she went off to a website? I, not in this exact context that. I don't know of anything close. It's one thing, we have, we have some cases that are sort of analogous when you're clicking through an online contract and there's an arbitration provision. That's sort of analogous. And then we have products where something is marketed and there's an asterisk and that is not a trip to a website, but it's literally on the label or on the product somewhere else. And I'm trying to figure out if this is a different expansion.  So, so in response to Judge Hurwitz's question, I think you were, I just want to make sure, are you agreeing with the proposition that the, that a reasonable consumer in this circumstances have having received this letter is on notice of, of, of, of what exactly? I think you've said yes to, she'd be on notice that there's, there's something more than, well, that there's something more because it says limitations apply or something like that. But what's the best authority we've got for how much more she's charged with knowing? Well, going back to the premise of the question, a reasonable consumer would not need any additional information to make conclusions about what is being represented. So they would not need to look elsewhere. The reasonable consumer wouldn't need to look beyond the marketing letter. The question is whether she's required to, whether she's charged with knowledge of looking. And I think some of our authority, and you both sides have invoked these, these labeling cases, which charges the consumer with knowledge of at least recognizing because of an asterisk that there's more, right? And I think you've conceded in response to an earlier question that one of us posed that this consumer, Ms. Schellenberger, would have known, it says limitations apply. So she, she knows there's, you're calling it a scope issue. There's a scope issue. She's got that. But I'm trying to figure out how far we've taken that, or more importantly, how far the Washington court has taken that. Your Honor, I don't believe there's a case that requires a consumer to then, that the generic limitation and exclusions apply is enough to put a consumer on notice that they need to go to an internet source online, type in the URL, then to discover the contract and wade through a dense legalese contract. Additionally, Your Honor, I think the one thing that the district court, and I'm cutting in my rebuttal, so I'll be quick on this. The district court held that the failure to read doomed her capacity to deceive claim, but the failure to read principle is from contract law, and there's no Washington case that applies that contract principle to the capacity to deceive CPA context. And that's because it would be a functional equivalent to the reasonable avoidable test, which Washington, in Panag, the Washington Supreme Court held that does not apply to the deceptive CPA claims. I'm going to stop you because we haven't let Judge Batey get in a word yet, but, and so you'll take the time you need, please. Thank you. So I'm concerned with the standard that the district court applied in the motion to dismiss and at the procedural posture of the case. Our discussion today seems to presuppose that this is a question that can be determined as a matter of law and so that the district court can make that determination, but it's not clear to me that that's what this is. It seems there's some suggestion in Washington law that it's a question of fact or a mixed question of fact in law, and if we're applying Iqbal, we'd be looking at a plausibility standard if it was, you know, her claim was plausible that a reasonable consumer would have been misled, and this was a deceptive practice. So can you put it in context for us, how we should be viewing this? Because I don't think we're here to determine the merits, whether her claim succeeds, but whether it was appropriately dismissed at the motion to dismiss stage. And Your Honor is correct. At the motion to dismiss stage, it's just whether it's plausibly alleged, whether her proffered interpretation plausibly alleged that the marketing letter had the capacity to deceive a substantial portion of the public. Now, down the line, the question, ultimate question of whether it has the capacity to deceive, if the underlying facts are undisputed, then it becomes a question of law. But here, as Your Honor noted, it's just at the motion to dismiss stage. It's whether it's been plausibly alleged, and for the reasons previously discussed, it has. Thank you. Good morning, may it please the Court, Galen Bellamy for Appley Whirlpool Corporation. So, maybe we can pick up on where the discussion just left off, concerning whether or not what's before this Court is a question of law, and I think Washington courts are fairly clear and consistent, including the Washington Supreme Court, that unlike California, where the question of deception is a question of fact, the question of deception under the WCPA is a question of law. So, if we were to find that they stated a claim, would that also be finding that you're liable? No, this is a pleading standard. I understand, but if it's a question of law, and the facts are undisputed, and I think in this case the facts aren't disputed, then wouldn't our ruling that it stated a claim necessarily mean that you were liable? No, Your Honor, I don't think it means that. In fact, when you look at the cases in applying California law, where they've had the exception California's got a very different standard. I understand that. Reliance, et cetera. I understand that, but there are exceptions where the Court has found as a matter of law that a claim is not deceptive for pleading purposes. There are no contrary examples where the Court finds as a matter of law it is deceptive. For a pleading standard, the question would be, have they plausibly alleged that a deception has the capacity to- I understand the general distinction. My difficulty is that nobody disputes in this case that she got the letter. Nobody disputes that your client engaged in the buyout. And so, it seems to me as a practical matter, if we find that the letter was deceptive, we're finding that you are liable. So, one response to that question is that in order to determine that the letter is deceptive, the Court, because it's making this determination as a question of law, considers all the relevant information available to the consumer per the rules of construction that have been alluded to earlier. There's- But wait, wait, wait. Judge Horwitz jumped in, and I was just about to jump in with your response that it's a question of Washington law. Because I'm looking at Greenberg v. Amazon, which is from the Washington Supreme Court from 2024, and it holds that the first element of the claim, which is the defendant has engaged in an unfair or deceptive act or practice, is a mixed question of fact and law. It doesn't say it's a matter. It's a question of law that the Court can decide without it going to a jury. My recollection of Greenberg, Your Honor, is that it was applying the unfairness prong as opposed to the deceptive prong. That's what that analysis was about. They were sort of breaking new law in Washington about giving some substance to what the unfair prong means. But every Washington Supreme Court case, since Panang anyway, that has applied and analyzed the deceptive component as opposed to the unfair component has said specifically that it is a question of law to be resolved by the Court. Well, I tend to take Judge Beatty's point on this. But I, if I, were you done with that? Go ahead.  But in this particular case, you know, we're looking to see whether somebody was misled and the judge has said not as a matter of law. And so even getting past the point Judge Beatty has outlined as the first speed bump, it seems to me there's another one. Because the, and this was alluded to by opposing counsel, the district court in this case looked to this document, the plan, the service plan that's available by asterisk, by going to a website. I didn't know that the Washington Supreme Court has ever required a consumer to do that. What's your best authority for that? Well, so this, the Ninth Circuit's recent panel decision in story applying Washington law and the WCPA said consumers are charged with the knowledge of contracts. And so in interpreting whether a communication is deceptive, it should be considered in light of the contract, whether they read it or not. Well, but this is where, this is where I think that your brief really does conflate the contract principle and the, and the contract claims not an appeal before us. We're looking at a consumer protection statute and we look at these in various states as you know, around the, around the circuit and, and Washington's case law, if we're predicting what the Washington Supreme Court would do, it's pretty darn protective. So it is, it is a leap that I don't know that we've taken before, sir. Maybe through buying a car or a house or something, but you know, we calibrate this, I think reasonably, calibrate this to the, the, the, the, the purchase that's being required. I gave one admittedly more extreme example on, on the, on the spectrum because we had a whole lot of hand sanitizer cases, I seem to, to have been a magnet for hand sanitizer cases in recent years that where there's an asterisk and, or a cereal box and it's one thing to request or require a consumer to go to that length and charge her with that notice. But, but this is quite a lot more. And I think this is what the district court did, apply contract principles when he decided she wouldn't have been misled if she'd gone to read the service plan. If you think I'm wrong about that, I'm all ears. So respectfully, Your Honor, I do, and it goes back to a point Judge Hurwitz started with, which is when there are covenants in the contract, when there are an asterisk, when there is a disclaimer that say limitations and exclusions apply, independent of contract principles, the law expects reasonable consumers to go do further research, to look at the  What's the best, what's the best, that's okay. What's the best case law you've got for that principle? How far do we make them go? Do we, have we ever said, has the Washington, we're just the Ninth Circuit, has the Washington Supreme Court said that the consumer under these circumstances is charged with knowledge of what the contract is on the website, and then you can go to Judge Hurwitz's question. On that specific question, no, Your Honor, the reasonable consumer standard that has been applied by this court repeatedly, often in connection with California law, has recognized that when a contract has these caveats, that the consumer is obligated to do more work. Davis HSBC Bank said the consumer was unreasonable for saying because something wasn't disclosed in the, in the advertisement that it didn't exist. What was the something in that case? It was the annual fee for the credit card. So a $59 fee for the credit card.  I'm not sure what exactly. Well, who gets a credit card without paying an annual fee? So I mean, I think it all, it is context specific. And I think this brings me right back to Judge Beatty's point, because we're at the 12B6 level. I just want to leave you with that thought and turn the floor over to Judge Hurwitz. So, but I have the same question in a different way. I'm not trying to suggest an answer to it. I tend to agree with you that the case law says that when the flyer, the advertisement alerts you that there are exceptions and limitations on coverage that the consumer is then, a reasonable consumer has to then look to find, look at the place they're sent. The difficulty I'm having here, and I'm not sure I'm getting, I'm not sure there's an answer to it in Washington law, is this. I'm, I think that the flyer is deceptive in the sense that it says you can get a replacement of your machine because you never will, given the buyout clause, unless there's severe deflation, which doesn't look like it's on the horizon. And you can buy out the machine for $750 of the purchase price. Why would you ever give somebody a brand new machine instead? And so I think it's deceptive in that, in that way, at least potentially deceptive. My difficulty and the one I'm struggling with is this, and I don't think there's anything in the flyer that alerts the consumer to consult the contract to find out if you really can ever get a replacement. So if the consumer had consulted the contract on coverage and other issues, they would have discovered that. I'm trying to figure out what the, so I can't find a case closely on point, and I'm trying to figure out what the consequence of that is legally. So a couple of points about that, Your Honor. First, the case isn't about replacements, and Plaintiff hasn't challenged or based her deceptive claim on this theory of there's no, there's really no replacements. Two, the contract actually doesn't require that the product that is replaced be a brand new version of the three product. It just has to replace the product. Right. And so it will. With an equivalent. And so it will make economic sense to do a replacement in some circumstances. Your Honor's question presupposes that it would never happen, and there's nothing in the record to suggest that, and that is not in fact the case. Almost. And I think that opposing counsel's position that I do see articulated in her briefing is that a reasonable consumer would look at this flyer, letter, and understand that the promise is that the defendants are going to repair or replace her washing machine. Do you disagree with that? I do, Your Honor. Because of all of the qualifications and the see the terms and conditions and the asterisk that just because it doesn't say buyouts are an option doesn't mean the consumer can reasonably conclude that they're not. But we have a, there's a principle that you don't hide an elephant in a mouse hole, right? So you look at the graphic of what this letter entailed, and it's labeled as a service plan advantage, promises, only authorized technicians using KitchenAid parts, and then there's a check comparing the plan versus other typical relay plans. And it would seem a reasonable consumer reading this would think, oh, if I pay this extra amount of money, my washing machine breaks down after the limited warranty. I'm basically extending my warranty so I can get my washing machine or my dishwasher, whatever authorized technician who will use the right parts. And if for some reason they can't repair it, they're going to replace it. But it doesn't say, you know, if it said on the front of it, this is a repair, replacement or buyout plan, here's what you're paying for, it would be an entirely different situation. But it doesn't say that. It is just full in your face, we're going to repair or replace your appliance. And at this stage, how is that, how could that not be a plausible claim of being deceptive? Because your honors question assumes that you look exclusively at the terms of the contract without regard to the other information available to the consumer. So back to the asterisk and limitations apply. This is not a product, I'm sorry. So I mean, part of it is, you know, the importing of contract principles, well, if I'm buying a house and I'm signing my mortgage papers for a vehicle, that's a whole different level of scrutiny than if I'm sent a flyer that says, hey, here's a good deal, you know, protect your appliance for this amount of money and you can basically get it repaired for a few more years. I don't want to take up my co-counsel's time. So the product is a contract. It is not like the products in Whiteside where you had a hairy mother walking down the grocery aisle or actually Gerber v. Williams where they were buying fruit snacks and they didn't have time to read the box. It is a contract. And so is it reasonable for a consumer to buy a contract without ever looking at it and instead look at four bullet points in a letter and say, I know what's in this contract? Why isn't it reasonable for the, for KitchenAid or whoever is running this program, just throw another couple of words on here? Because you don't. Instead, it's like, here you go. We're going to repair and replace your appliance. Here's an asterisk. By the way, there's some limitations and conditions. Go read this elsewhere or include the small print. Include the next page. Include section 10, section 20. And you are indeed over time. So please wrap up quickly. Okay. I will. No, no. No, no. Answer the question, please. Judge Beatty just posed a question. Yes. And I wasn't sure if I understood it as a question, but I will. It is a question. I mean, you're saying it's unreasonable for the consumer not to read the asterisk and then go elsewhere and look for this information, right? That's your position. Yes. So the point, of course, is that we are selling a contract. In order to do that, we have to summarize in a condensed way some of the benefits of the contract and say, see terms. Everybody is used to saying, see terms and conditions. If you're selling a contract, unless you're going to disclose every single term in the contract in the sale, someone can come back later and second guess and go, gosh, I wish I had known that. But I didn't read the contract, so it's not my problem. And I'm going to take that as your summary of your argument, because you're almost four minutes over time.  And I'll thank you for your patience with our questions. Thank you. Counsel, we'll start your clock with a full 10 minutes, but please do keep an eye on your clock. I appreciate that, Your Honor. Good morning, Your Honor. May I begin? Yes. My name is Adam Kaiser. I'm with the law firm of Alston & Burr, counsel to AIG. If I can just start off, I know we've been going at it for about a half an hour. If I can just address some of the questions that have been asked. On the first question that Your Honor asked about whether if we decide in the plaintiff's favor, doesn't that mean that you are necessarily liable because it's a question of law? The short answer to that is no, of course, because there are other elements to the claim. And two of the elements are causation and injury. And the district court below did not address the issue of causation and injury because that- I agree they did not address causation. Is injury required in a suit that merely seeks injunctive relief? They seek damages here. But they may not get damages. They're seeking statutory damages, I assume. They're seeking damages. And there's five elements of a cause of action. I don't want to take too much time on this law versus fact thing. I want to ask you a question about a topic in this case nobody's addressed so far. And it's the certified technician question, which I think was count three of their complaint. And I'm not sure the district court actually addressed it. But one could read the marketing materials and indeed even the contract as saying we're promising you a factory certified technician. So when it turns out- Wait, let me finish. And then it turns out you really aren't going to supply one if there isn't one in her area. Why isn't that a misleading statement? So what the flyer actually says is service by KitchenAid only authorized technicians. So- Okay, so- But there are no authorized technicians in her area, are there? Well at the particular time that she was looking to have her appliance repaired, there was no available time slot for her. But wait a minute. I think she's alleged, again going back to Judge Beatty's point, we're just at the 12B6 stage. I think she alleged she waited a month. I mean, there was, there's the 20, well, she arguably waited a year according to the complaint. So- I'm not worried about the time. And then at some point, and then at some point she wound up trying to get somebody on her own, but- Had she been supplied with an authorized technician, whether it was factory authorized or not, then she might have gotten a repair. But she wasn't. And nobody seems to contest that she wasn't. It wasn't just that it wasn't one available that day. On Tuesday or something. It was this, right? It was this protracted period of time. I don't think she ever got one. When she called, she was told that there was no technician, there was no time slot available for her. She lives in a very remote area. So are you saying that there was one available to her? And you, even though you went back and forth with a year over this woman, you never said to her, oh, there's one available. We'll get her to you. We'll get you one tomorrow. Just can't get you one at nine o'clock today. She's at least alleged that she was told that she couldn't get a certified technician in her area. And that was therefore her responsibility to find somebody who would do it on your client's terms. We'll give you a chance to answer the question.  But why isn't that misleading? Because- This is where we give them a chance to answer the question. That's what I'm asking. Go ahead. Why isn't that misleading? It's not misleading, Your Honor. because all the flyer says, as I just read it, it says, service by KitchenAid, only authorized technicians. Now, it did happen in this case that at the time that she made her claim, there were no technicians available to service her appliance during that time. Well, you keep saying during the time. Is it your position that your client didn't have a factory-trained technician because of her geographic location? Or was it that she needed it at a particular date and time? Well, she called and what they told her, according to the complaint, okay, so this is just the allegations in the complaint, is that there were no technicians available at that time.  Now, what you said a second ago, so here's the deal. We're at consumer protection is our lens that we're looking at this through. And so if the issue is that she's at a remote location and they can't provide that service for her because she lives in Nome, Alaska, just saying, then that's a pretty easy matter for the AIGs of the world to look at her zip code and say, you know, this isn't an offer that we can extend to you. It's not subject to your area. But I think what happened here, again, we're just at the 12B6, is that they accepted the $109 or whatever it is for the purchase of the plan. So to me, it would matter a great deal if the problem is that she's just in too remote an area, because that seems to me that is truly a bait and switch. So this didn't go on for a year. I mean, in September 22nd, her gasket malfunction, Whirlpool said they had no service appointments available. A few days later, she received an email saying that she had the option to hire her own repairman. And she spent a week trying to find- What about the part where she spent a year grubbing out her own dishwasher? First, there was the beginning of the sequence that said that a gasket failed. And she asked, I don't want to take a whole lot of your time with this. But she asked for a replacement gasket. She got the replacement gasket. My law clerk makes me learn these facts. I can't help you. And so then they replaced the gasket and then that failed. And then for about, I think it's a year, sir, there was gunk. And she was cleaning that out repeatedly. It's from September 22nd, where they said they had no service appointments available to February of 23, that the dishwasher stopped working completely. And she was offered a buyout of $764. Right. That's the end of the sequence. I was just trying to call your attention to the beginning of the sequence, the whole sequence. Yeah, I mean, those are the undisputed, that's what's in the complaint. The allegations, sure. OK, but she was given the opportunity because they had at that particular time, in this sort of immediate post-COVID period, they did not have a technician available in her remote area. Now, you promised you promised a nationwide network of authorized service technicians. I'm quoting from ER 84. And you did not have a, apparently, you did not have a nationwide network of authorized service technicians available to service her machine. Or maybe you didn't in the immediate post-COVID area. And maybe the reasonableness of all of that has to be factored in at some point beyond the 12B6 level. Well, they do. There's no allegation in the complaint. They didn't have AIG and Whirlpool doesn't have a nationwide network of technicians. They do. They send out people every day all over the country. But to her, I'm not worried about where you send them to other places. She seems to have plausibly alleged that she requested a technician and was told there were none available. And then she was eventually told, well, go find one on your own that will accept our terms. That may be false. And that's why I think you're right in saying that questions of fact remain in this case. But if that's true, why isn't that directly contrary to the implication of the marketing materials that you have a nationwide network of authorized factory technicians? Because I think the implication is, and they'll be there to help you. Well, the short answer to that, Your Honor, is you have to look at the flyer in its totality. And I know we've been through this, but the case law on this could not be any clearer. The story decision from this court just a week and a half, two weeks ago, makes it absolutely clear that you can't just isolate particular words in the flyer and say, OK, well, we're done with it. OK, the flyer has disclaimers. It has an asterisk. Is there anything in the plan that says we won't give you a nationwide, we won't give you a technician if we can't find one? Well, I mean, look, we live in a world where sometimes it's hard to find a repairman. And that's true even for AIG that has a nationwide network of repairmen. Can I ask you to just step back a little bit? Because they're pretty granular now, which I think is fine. But it seems to be raising my concern, expressed to your co-counsel, whether this is a factual or legal question. I pointed to the Greenberg case from the Washington Supreme Court, which seems to indicate that the first element of the CPA claim is a mixed question of fact and law. He said, no, no, no, it's only as to the unfairness part, not the deceptive practice. But before that, there was another Washington case, the Washington Court of Appeal case from 2019, state versus living essentials, which says the meaning of an advertisement is a question of fact. So there do seem to be some factual components to this, which brings me back to the concern that we are at a motion to dismiss stage. So what is your response to whether it matters if there are disputed facts at this stage? So what Greenberg says, I'll just quote it, quote, where the underlying conduct is undisputed, then the court will likewise decide the issue as a matter of law. So if what actually occurred on the ground, the facts are disputed, then that goes to a jury. But if the facts aren't disputed, then it could be a question of law. On this 12B6 motion, all of the plaintiffs' allegations were taken as true. And what the judge said, OK, taking all these allegations as true, OK, so there's no dispute as to what occurred. But one of her. So there are the factual allegations of what occurred, as in I received this letter, I read it, it says X, Y, Z. There's also the factual issue of was she deceived? Would a reasonable consumer be deceived? Is that not a factual question? That is not a factual issue. OK, the courts in Washington have repeatedly said it's very different from California, OK, where that is a factual issue in a UCL claim in a non-jury trial. But Washington is very different. What's the case that says whether a person is deceived is a question of law? So I think that's in L.A. Investors. I think that's in Mandalay. I think every case ever decided in Washington, either by a federal court sitting in diversity or a state court, has said it's a question of law unless the underlying facts are disputed. The underlying facts were not disputed here because the plaintiff. Because the court properly in a 12 v. 6 motion took as true everything that was alleged in a complaint. And so that is why the factual circumstances are totally irrelevant here, because the judge said, I am going to assume everything in the complaint is true. Now, let me see if there was a deceptive misleading statement in the flyer, because that is a question of law. And I'll just go back to this. I kind of gave short shrift to story before. Well, in a story which I just pulled up, are we talking about the same story, the unpublished story versus Amazon decision that the breach of contract case that story? No, absolutely not. I mean, at the very end of my question was, are we talking about the same case, sir? Is this I'll talk story versus Amazon dot com, which was decided on May 26, 2026. Yeah. OK, which for which we submitted supplemental authority. Is it a breach of? It's it's not a presidential opinion because it wasn't published. Nonetheless, it's a decision that was issued by this court two weeks ago and is completely consistent with all the other cases that we cite, including Davis and many others. And so you tell me, can you just help me out on this one? We're not trying to give you a hard time, but we are trying to get the law right. And this case, I don't see a Consumer Protection Act claim in it. Is there one? So the story we're talking about, the story decision, I am. I am. Yeah. So here's exactly what this court said, and it really answers the answer to my question that there's not a Consumer Protection Act claim. Can you just just start with that? That would help me out a lot. Pardon me, Your Honor. I'm sorry that not at all. Is there a Consumer Protection Act claim in this case? Yes, of course, there's a Consumer Protection Act claim in this case. And the very penultimate sentence of the decision says, quote, courts understand reasonable consumers to have read the terms of the contracts, including for CPA claims. So I was looking at the first. Again, it's an unpublished memorandum disposition, but the first sentence is this. The district court properly dismissed the breach of contract claim. That's why I asked the question, sir. Yes, I mean, there were there are CPA claims in story. And if it's clear, if you look at the two district court decisions below that there were CPA claims asserted and. But did they only appeal the contract? No, they everything was was appeal. And it says, Your Honor, me, I hope we're reading the same decision here. The district court properly dismissed story CPA claim to state a claim for violation. And that would have been a simple answer to my question. The simple answer to my question is, is this is an unpublished memorandum. You've been very clear that it's not binding. I was pointing out the first enumerated paragraph says the district court properly dismissed the breach of contract claim, sir. I asked you if there's a CPA claim. I think the answer to my question is, again, very tough to note. It's a memorandum disposition that's two pages long. The second enumerated paragraph refers to a CPA claim. That's all I needed. Thank you. OK. Thank you, Your Honor. So tell me, is this the authority you want to rely on for the proposition that the disclaimer at the bottom of the of the letter does charge the consumer with the knowledge of what she would have learned had she read the the online contract? Is this the authority? Well, that's precisely what the case holds. So that does that mean? Yes, sir. My question wasn't that is, yes, you're OK. Are there other authorities you would like us to consider? Because this one's not binding. No, I realize it's not. But are there other? I don't want to give you short shrift. Are there other authorities you want us to continue can consider? Well, there are numerous cases by this court, including Davis and Whiteside. I understand. I understand that those are from California. That being said, the CPA and UCL are both mini FTC acts. They all have the same origin. They all use a reasonable consumer standard. I think we can all agree that a reasonable consumer in Washington is the same thing as a reasonable consumer in California. Well, I'm not trying to give you a hard time. And I'm not sure you're going to believe that. But I'm not. But I but I I think we have recognized that the Supreme Court in Washington hasn't always done or interpreted this the same way as the Supreme Court in California. That's why we're trying to be precise and careful. We're just a federal court. And our job is to be awfully careful about what the state Supreme Court would do. And I know you appreciate that. And I appreciate your patience with all of our questions. Let me just make sure. Do we have any additional? No. Thank you. Thank you. Counsel, you have two minutes. Thank you, Your Honor. Just starting with the story decision, the analysis there is not binding. It's also not persuasive. The court relied on the Skagit State Bank case, which is a pure contract principle case for the failure to read defense. And then to bridge the gap, it relied on a Washington District Court case, Haywood. But there, the conduct being challenged was conduct governed by the contract, not pre-contract marketing representations. It's about this long. I mean, it is a very abbreviated opinion. I think we'd have to dig pretty deep to find out what was really raised. And I don't I don't know the answer yet. So you you've covered that. Thank you. Thank you, Your Honor. And just another point to clarify, we have challenged the replacements aspect of the promises in the letter. Did you challenge that in the district court? Yes, we've challenged the representations as repair or replacement coverage that's promised when the contract in reality reserves the right for defendants to not provide either because they can provide a buyout even for covered malfunctions. I don't trust my memory. Could you go back over the opposing counsel thinks I and I may have got have this wrong. What is the sequence about her requesting the gasket, the replacement gasket? Could you do that quickly? Yes, Your Honor. So there's two gasket replacements. The first one happened, I believe, in 2021. And that was when it was still under the warranty, the limited manufacturer's warranty. She called. It got replaced right away. The second one is September 2022. She called to get a replacement. She was told that there was not a technician available. And then later it was followed up saying you can find your own. But the conditions to find her own technician were very onerous and she could not a technician during the time. And then she called back and then didn't receive. She called back, asked for a manager and was told that someone would get back to her and no one ever got back to her. And then in February 2023 is when I believe is a different issue that her dishwasher stopped working. But that was the year, the February to February. No, Your Honor. I'm sorry. It was September 2022 to February 2023, where she's cleaning out the black set in her. Thank you. Yeah, I appreciate that clarification. And you go. I don't know why. I just want to know about how long the black gunk took. Do you have additional? No, I have a question. Yes. Why shouldn't we certify this to the Washington Supreme Court? About so because I think the Washington case law addresses this issue. We're not asking for a novel interpretation. The net impression standard says that if the net impression of the communication has the capacity to deceive, even if it contains truth, it's not an unsettled issue. I think it's we're asking for just a straightforward application of the net impression. I guess one thing I'm left with after this morning's argument is that nothing in this case is entirely straightforward. And I appreciate your position that you think you win in front of the Washington Supreme Court. But Judge Kristen keeps expressing the same concern I have, which is that we have to figure out what they would do. Now, neither of you have suggested that. So I'm inclined to impose it on either side over their objection. But it does strike me this might have been a good case for certification. You don't need to respond. Well, if I may, Your Honor, if the court finds that that'd be helpful, then that is certainly an option here. We can do whatever we can do. The problem with the net impression is you're looking at the letter and you're and you're not considering the service plan. And I don't know that Washington courts would require consideration of that service plan as a matter of law. I don't know that. I don't think they have yet. And so that's the problem. If I could briefly address that briefly, very briefly. Yes. The disclaimer case law from Washington that we've cited in the brief talks about whether it changes the net impression. And here the generic language limitations and exclusions apply doesn't change. You're not answering the question. The question. And then I'm going to stop. So this is rhetorical. It's not the language on the letter. It's importing the service plan, the online service plan. That's what the district court did by my read. And that changes things a lot. Yes, Your Honor. And I would say that's inappropriate or not necessary here because a consumer would not know to look to the letter to find out there's a fundamental limitation. Well, that's the problem with the net impression test. So thank you all really very much for your patience with our questions. We do take this seriously. We're trying to get it right. And it's a it's a tricky area. That's that's it for today. We'll stand in recess. Thank you.
judges: CHRISTEN, HURWITZ, BADE